Docket No. 102985.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

---

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. TRAVIS WHITFIELD, Appellee.

*Opinion filed December 13, 2007.–Modified on denial of rehearing April 23, 2008.*

JUSTICE FITZGERALD delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

Justice Burke dissented, with opinion, upon denial of rehearing, joined by Justice Freeman.

## OPINION

Defendant, Travis Whitfield, pled guilty to the offense of aggravated possession of a stolen motor vehicle in the circuit court of Cook County and was sentenced to a term of probation. Shortly after sentencing, the State learned that defendant was ineligible for probation because of his criminal record and moved to vacate the plea. Defendant's plea was withdrawn, and he was convicted of possession of a stolen motor vehicle and sentenced to eight years' imprisonment. A divided appellate court concluded that as a matter of fundamental fairness, the trial court should have considered granting defendant sentencing credit for the time he spent on probation. 366 Ill. App. 3d 448. We granted the State's petition for leave to appeal and now reverse the appellate court's judgment.

BACKGROUND

In 2000, the victim, 75-year-old Emmerline Clarkston, hired defendant and another individual to do electrical work in her apartment. The project lasted several months, and Clarkston was home on some occasions when defendant and his partner were working. When home, Clarkston occasionally left her key ring, including her car key, hanging on a doorknob so she could locate it easily. On June 25, 2000, Clarkston's 1991 Lexus was stolen while parked in front of her house. She did not give anyone permission to take her car.

Almost one year later, on May 9, 2001, a police officer performed a license plate check on a Lexus being driven by defendant, which revealed that the car was stolen. Defendant was arrested and subsequently gave an oral statement indicating that he did some work at Clarkston's house, took her car key, copied it, and then stole her Lexus. Defendant admitted that he had been in possession of the car for approximately one year.

On September 30, 2002, defendant pled guilty to the offense of aggravated possession of a stolen motor vehicle. Both defendant and the State waived a presentence investigation. The State advised the court that defendant had one prior felony conviction for possession of a stolen motor vehicle in 1987. Relying on this information, the trial court sentenced defendant to two years' probation and ordered him to complete 30 days of community service through the Sheriff's Work Alternative Program (SWAP) and pay $500 in restitution to Clarkston within one year.

On October 7, 2002, the State moved to vacate defendant's guilty plea, asserting that defendant's sentence was void. The facts pled in the motion demonstrated that the State mistakenly advised the court that defendant had one prior felony conviction when defendant actually had two prior felony convictions. Defendant was thus ineligible for probation and was subject to a mandatory Class X sentence. On October 16, 2002, the parties appeared on the State's motion to vacate and defense counsel requested a continuance to research the voidness issue.

Defense counsel requested additional continuances over a six-month period while waiting for certain trial transcripts. On May 15,

2003, defendant moved to vacate the judgment against him and withdraw his guilty plea. Defendant's motion was allowed on June 5, 2002, and, at that point, approximately eight months had passed since defendant was initially placed on probation. There is no information in the record as to whether defendant complied with his probation conditions during that eight-month period.

The matter proceeded to a bench trial, and defendant was convicted of possession of a stolen motor vehicle. At sentencing, the trial court found that defendant was subject to a mandatory Class X term. The court then sentenced defendant to eight years in prison. The record does not indicate that the trial court considered giving defendant credit for the time he spent on probation for the instant offense, nor does the record show that defendant asked for such credit.

On appeal, defendant asserted that the trial court erred in failing to consider whether he should receive sentencing credit for the time he spent on probation. Defendant admitted that there is no statutory provision specifically requiring the court to make such a consideration under the circumstances of his case. Defendant maintained, however, that he was entitled to this consideration based on section 5–8–7(b) of the Unified Code of Corrections (Code) (730 ILCS 5/5–8–7(b) (West 2004)), which mandates that a court apply credit for all time spent in custody prior to sentencing, and section 5–6–4(h) of the Code, which permits a court, in its discretion, to give a defendant credit for time spent on probation after a defendant violates probation and is sentenced to prison (730 ILCS 5/5–6–4(h) (West 2004)). The appellate court, with one justice dissenting, concluded that neither of these statutes applied to defendant, but it still felt compelled to grant defendant some relief on grounds of fundamental fairness. The majority stated:

> "[W]ere we to simply affirm the decision below without remand for further consideration of defendant's final sentence, we would be creating, in effect, two classes of similarly situated defendants treated in vastly different manners. That is, under our statutory scheme as evident in section 5–6–4(h), a defendant originally placed on probation but who then violates its terms and requires the trial court to again become involved in his cause to impose a prison sentence has the potential

opportunity to receive some consideration for his time spent on probation. Meanwhile, a defendant (in the same shoes as defendant here) originally placed on probation and who complies with every one of its terms,[1] participates in the community without further police encounters or legal difficulties, and meets all other conditions for a period of time would receive absolutely no consideration at all, simply because his probation was later declared void rather than revoked.

This is inherently, not to mention fundamentally, unfair. Ultimately, we are encroaching upon due process rights." 366 Ill. App. 3d at 461-62.

The majority remanded the cause for the trial court to consider whether defendant should receive credit toward his prison sentence for the time he spent on probation.

The dissent concluded that defendant was not entitled to this consideration because his probation was void at its inception and should be treated as if it never existed. Further, the dissent did not agree that the issue invoked due process or fundamental fairness concerns because defendant did not identify any statutory or constitutional right to receive credit. 366 Ill. App. 3d at 465-67 (O'Malley, J., dissenting). According to the dissent, defendant was "the fortuitous beneficiary of freedom to which he was not entitled." 366 Ill. App. 3d at 468 (O'Malley, J., dissenting). We granted the State's petition for leave to appeal.

## ANALYSIS

The State argues in its brief to this court that defendant forfeited review of the credit issue on appeal because he never requested credit for the time he spent on probation during the sentencing proceeding and did not raise the issue in posttrial motions. Defendant does not dispute the State's assertion that the claim was forfeited. However,

---

[1]The appellate court stated repeatedly in its opinion that defendant complied with the terms of his probation. The record, however, does not provide any information regarding the status of defendant's probation.

-4-

defendant maintains that the forfeiture rule was properly relaxed by the appellate court.

We need not address the forfeiture argument raised by the State, or defendant's arguments in reply, because the State did not include the forfeiture issue in its petition for leave to appeal to this court. Supreme Court Rule 315(b) states that a petition for leave to appeal must contain "a statement of the points relied upon for reversal of the judgment of the Appellate Court." 177 Ill. 2d R. 315(b)(3). Rule 315(b) also requires "a short argument (including appropriate authorities) stating why review by the Supreme Court is warranted and why the decision of the Appellate Court should be reversed or modified." 177 Ill. 2d R. 315(b)(5). The State's petition for leave to appeal does not meet either of these requirements with respect to the issue of forfeiture. Accordingly, we decline to consider the State's forfeiture argument, as it was not properly preserved for our review. See *People v. Campa*, 217 Ill. 2d 243, 269 (2005), citing *People v. Carter*, 208 Ill. 2d 309, 318 (2003); see also *People v. Williams*, 193 Ill. 2d 306, 347 (2000) ("The rules of waiver are applicable to the State as well as the defendant in criminal proceedings, and the State may waive an argument that the defendant waived an issue by failing to argue waiver in a timely manner"). We turn to the issues properly raised by the State.

### Statutory or Precedential Authority

The parties agree that there is no statutory authority that would require the lower court to consider giving defendant sentencing credit for the time he spent on probation. The parties also agree that there is no precedent for the appellate court's actions. In fact, the State argues that the appellate court's decision to remand the matter for consideration of such credit stands in direct conflict with previous decisions of this court and cites to *People v. Wade*, 116 Ill. 2d 1 (1987), *People v. Arna*, 168 Ill. 2d 107 (1995), and *People v. Judd*, 396 Ill. 211 (1947), as support. Defendant counters that these cases are distinguishable and irrelevant to the issue presented in this case.

We disagree with defendant's contention that the cases cited by the State have no bearing on the case before us. Both *Arna* and *Judd* set forth general legal principles that can be applied to the issue we

now face. In *Arna*, the defendant was sentenced to concurrent terms of imprisonment when consecutive sentences were mandatory pursuant to statute. *Arna* espouses the rule that a sentence which is contrary to a statutory requirement is void and can be corrected at any time. *Arna*, 168 Ill. 2d at 113. In *Judd*, the defendants were sentenced under an invalid statute and served four years in prison. The defendants were resentenced, but were not given credit for the time they had already served because there was no statute then in effect allowing for such credit. *Judd*, 396 Ill. at 212. The law which guided *Judd*'s outcome has since been changed and defendants are now entitled to credit for time spent in prison upon resentencing for the same offense. See 730 ILCS 5/5–8–7 (West 2004); *North Carolina v. Pearce*, 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969). Nevertheless, the *Judd* opinion sets forth the relevant legal principle that courts are bound by the laws in effect when fashioning judgments. The *Judd* court stated: "[T]his court cannot make laws. It is authorized only to interpret them." *Judd*, 396 Ill. at 212-13.

*Wade* provides more specific guidance to this court, as it presents a factual scenario that is similar to the one now before us. In *Wade*, the defendant pled guilty to robbery and received probation. Several months later, it was discovered that the defendant was ineligible for probation because of his criminal background. The trial court vacated the probation order and the defendant withdrew his plea and was convicted. *Wade*, 116 Ill. 2d at 4. On appeal, the defendant argued that the trial court erred in failing to give him sentencing credit for the time he spent on probation. The appellate court concluded that the defendant was not entitled to credit because his probationary sentence was void. *People v. Wade*, 137 Ill. App. 3d 878, 882 (1985). The defendant did not appeal the appellate court's judgment regarding sentencing credit to this court. Instead, the defendant argued that the trial court lost jurisdiction over him 30 days after imposing the sentence of probation and was without authority to vacate his sentence months later when the State realized its error. This court rejected the defendant's claim and affirmed the appellate court, finding that the defendant's sentence could be set aside at any time because it was void. *Wade*, 116 Ill. 2d at 5-6. The *Wade* court stated: "The legislature has authority to define crimes and establish the nature and extent of criminal penalties, and a court exceeds its authority if it

orders a lesser sentence than is mandated by statute, unless 'the [mandated] penalty shocks the conscience of reasonable men.' " *Wade*, 116 Ill. 2d at 6, quoting *People ex rel. Ward v. Salter*, 28 Ill. 2d 612, 615 (1963).

*Wade* makes clear that defendant's sentence of probation is void. *Wade* also reinforces the notion that courts are not authorized to fashion sentences that do not conform to statutory guidelines. Because defendant's original sentence of probation is void, and because there is no statute that permits courts to give credit for time spent on a void probation, it would seem defendant is not entitled to any consideration towards his current prison sentence for the time he spent on probation.

Our analysis cannot stop there, however, because the appellate court found this resolution to be fundamentally unfair and an encroachment upon defendant's right to equal protection, and remanded the matter for the trial court to consider whether defendant should receive some credit. The State asserts that the appellate court's order amounted to an unauthorized use of supervisory power because there is no constitutional dimension to this case. Defendant disagrees, and asserts that the trial court violated his constitutional right to equal protection under the law when it failed to consider the credit issue.

Equal Protection

Defendant contends that his right to equal protection has been violated because he is similarly situated to defendants who are placed on probation, violate the probation, are sentenced to prison, and then are given sentencing credit for time spent on probation. Defendant maintains that probation violators are put in a better position pursuant to the discretionary sentencing credit provided for under section 5–6–4(h) of the Code than persons like him who comply with the terms of their probation and then are sentenced to prison without receiving any credit for probation time served.

Equal protection guarantees that similarly situated individuals will be treated in a similar fashion, unless the government can demonstrate an appropriate reason to treat them differently. *Andrew N.B.*, 211 Ill. 2d at 466. In cases where fundamental rights are not at issue, we employ so-called rational basis scrutiny and consider whether the

challenged classification bears a rational relationship to a legitimate governmental purpose. *Andrew N.B.*, 211 Ill. 2d at 466.

Defendant urges us to find that the government has no rational reason for treating probation violators differently, and even better, than individuals like himself, who are compliant with probation conditions. However, we cannot go so far as to apply the rational basis test in this case because defendant cannot meet the threshold requirement for an equal protection claim–demonstrating that he and the group he compares himself to are similarly situated. Defendant cannot legitimately be compared to an individual placed on a lawful probation who violates that probation and is given credit for probation time which has been completed. This is so because defendant, as a Class X offender, was mandated to serve a term of imprisonment upon conviction. Defendant is different from other probationers because his probation was unlawful and void.

Defendant nevertheless maintains that individuals who have violated probation and those whose pleas are withdrawn after being placed on a void probation are similarly situated because they are bound by the same "statutory restrictions," but are treated differently for arbitrary reasons once their probation is terminated and they are sentenced to prison. Defendant's argument lacks merit, however, because a defendant placed on a void probation is not bound by the conditions of the probation. Any attempt to revoke probation or punish the defendant for noncompliance would have no effect. *People v. McCarty*, 94 Ill. 2d 28, 40 (1983) ("the order of probation based on the conviction was void; the two-year sentence based on revocation of this probation was likewise of no effect").

With respect to this case, the record demonstrates that defendant was on probation for approximately one week when the State realized its mistake and moved to vacate the plea. Defendant maintains that he complied with the terms of his probation, "believed" he was on probation for eight months while the case was continued, and should get credit for that time. First, we note there is nothing in the record that tends to prove or disprove defendant's assertions of compliance. However, whether defendant complied, or believed he was required to, is irrelevant because defendant was not actually bound by the terms of his probation and could not have been penalized for failure to comply with those terms throughout that eight-month period.

Accordingly, defendant was not similarly situated to other probationers and his equal protection claim must fail.

## Double Jeopardy

Defendant next contends that his constitutional right to be free from double jeopardy was violated because he was twice punished for the same offense and was not given credit for the probation he served. The State maintains its position that defendant's constitutional rights are not at issue in this case, as none of defendant's rights were violated when he was resentenced without receiving credit. Further, the State points out that the appellate court did not consider double jeopardy because defendant did not properly raise the issue in the trial or appellate courts; therefore, the State asserts that the double jeopardy issue is forfeited for our review. The State admits that defendant discussed double jeopardy in his reply brief to the appellate court, but argues that the claim was cursory, consisting of a one-sentence reference, and insufficient to overcome forfeiture.

We take judicial notice of the arguments raised in the parties' respective briefs below, and acknowledge that defendant did not raise a double jeopardy claim in his opening brief. However, defendant's initial failure to raise this argument does not automatically preclude its consideration. Supreme Court Rule 341(j) permits appellants to reply to arguments presented in the brief of the appellee. 210 Ill. 2d R. 341(j). A review of the briefs filed below demonstrates that defendant's double jeopardy argument was presented in reply to the State's assertion that defendant would not be entitled to any credit for the time he spent on probation towards his prison sentence under any circumstances, even if defendant served his entire two-year probation sentence. It would be unfair for us to require an appellant, when writing his or her opening brief, to anticipate every argument that may be raised by an appellee. See *Oliveira v. Amoco Oil Co.*, 311 Ill. App. 3d 886, 891 (2000), *rev'd in part*, 201 Ill. 2d 134 (2002). Thus, we hold that defendant's double jeopardy claim was not forfeited, as it was properly raised in response to the State's argument. See *Van Meter v. Darien Park Dist.*, 207 Ill. 2d 359, 378-39 (2003), (denying the defendants' motion to strike an argument raised for the first time in the plaintiffs' reply brief because the argument was an answer to arguments advanced by the defendants).

Defendant cites *North Carolina v. Pearce* to support his contention that his right to be free from double jeopardy has been violated. There, the United States Supreme Court stated: "We think it is clear that this basic constitutional guarantee [to be free from double jeopardy] is violated when punishment already exacted for an offense is not fully 'credited' in imposing sentence upon a new conviction for the same offense. *** We hold that the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully 'credited' in imposing sentence upon a new conviction for the same offense." *Pearce*, 395 U.S. at 718-19, 23 L. Ed. 2d at 665, 89 S. Ct. at 2077. Defendant also cites to several federal court cases which support the proposition that, pursuant to *Pearce*, a defendant should receive credit toward a subsequent prison term for probation time served on the same offense. See *United States v. Martin*, 363 F.3d 25, 37 (1st Cir. 2004); *United States v. Carpenter*, 320 F.3d 334, 345 n.10 (2d Cir. 2003); *United States v. McMillen*, 917 F.2d 773, 777 (3d Cir. 1990).

The State, in turn, directs our attention to Illinois cases which have held that double jeopardy principles do not require that a defendant be given credit for time spent on probation. In these cases, the appellate court reasoned that the rule set forth in *Pearce* does not apply to probation credit because probation is not the punitive equivalent of incarceration. See *People v. Linzy*, 45 Ill. App. 3d 612, 614-15 (1977); *People v. Calloway*, 44 Ill. App. 3d 881, 884 (1977); *People v. Williams*, 42 Ill. App. 3d 574, 576-77 (1976); but see *In re K.J.M.*, 168 Ill. App. 3d 564, 567-68 (1988).

Both the United States and Illinois constitutions provide that no person shall be put in jeopardy twice for the same criminal offense. U.S. Const., amend. V; Ill. Const. 1970, art. I, §10; *People v. Pinkonsly*, 207 Ill. 2d 555, 564 (2003). The double jeopardy clause protects a defendant from: (1) a second prosecution after an acquittal; (2) a second prosecution after a conviction; and (3) multiple punishments for the same offense. *People v. Gray*, 214 Ill. 2d 1, 6 (2005). We now must determine whether defendant would be subject to multiple punishments for the same offense if he is not given sentencing credit for the time he spent on probation.

*Pearce* may be read, and has been read by some, to support the proposition that a defendant is entitled to receive credit toward his prison sentence for probation time served on the same offense. See *Martin*, 363 F.3d at 37; *Carpenter*, 320 F.3d at 344 n.10; *McMillen*, 917 F.2d at 777; *In re K.J.M.*, 168 Ill. App. 3d at 567-68. We believe that this interpretation of *Pearce* extends the scope of the opinion beyond the facts actually contemplated by the Court. In *Pearce*, the defendant was convicted of assault with intent to commit rape and sentenced to a term of 12 to 15 years in prison. His conviction and sentence were ultimately reversed and he was resentenced to eight years. The defendant was not given credit for the prison time he already served under his original sentence. On appeal to the Supreme Court, the defendant asserted that the trial court's failure to give him credit for the prison time he served was unconstitutional under double jeopardy principles. The Supreme Court agreed and offered the following rationale:

> "We think it is clear that this basic constitutional guarantee is violated when punishment already exacted for an offense is not fully 'credited' in imposing sentence upon a new conviction for the same offense. The constitutional violation is flagrantly apparent in a case involving the imposition of a maximum sentence after reconviction. Suppose, for example, in a jurisdiction where the maximum allowable sentence for larceny is 10 years' imprisonment, a man succeeds in getting his larceny conviction set aside after serving three years in prison. If, upon reconviction, he is given a 10-year sentence, then, quite clearly, he will have received multiple punishments for the same offense.*** Though not so dramatically evident, the same principle obviously holds true whenever punishment already endured is not fully subtracted from any new sentence imposed." *Pearce*, 395 U.S. at 718, 23 L. Ed. 2d at 665, 89 S. Ct. at 2077.

The Court then added the following footnote:

> "We have spoken in terms of imprisonment, but the same rule would be equally applicable where a fine had been actually paid upon the first conviction. Any new fine imposed upon reconviction would have to be decreased by the amount

previously paid." *Pearce*, 395 U.S. at 718 n.12, 23 L. Ed. 2d at 665 n.12, 89 S. Ct. at 2077 n.12.

The *Pearce* Court considered credit for prison time served and, in *dicta*, for fines paid, but the Court was not called upon to consider the factual circumstances now before us. Thus, while the *Pearce* opinion may provide guidance, it stops short of resolving the issue.

Our appellate court recognized this nuance when previously faced with the issue defendant now presents. See *Williams*, 42 Ill. App. 3d at 577 ("We do not deem the opinion [*Pearce*] to have ruled that time spent under the 'clemency' of probation, although having a 'mild and ambulatory' punitive aspect, is constitutionally required to be equated to and credited upon subsequent incarceration imposed for the same offense"); *Calloway*, 44 Ill. App. 3d at 884 ("the deprivations of probation are so incomparable to those of imprisonment that no credit need be given"); *Linzy*, 45 Ill. App. 3d at 614 (expressing agreement with the holding in *Williams*). In *People v. Wilbur*, 50 Ill. App. 3d 65, 68-69 (1977), the appellate court outlined the reasons why probation and imprisonment should not be treated the same for double jeopardy purposes in spite of the *Pearce* Court's holding. The court noted that the purpose of probation is to avoid imprisonment and give criminal defendants the opportunity to reform themselves, whereas imprisonment serves to protect the public and provide strict correctional treatment. *Wilbur*, 50 Ill. App. 3d at 68-69. Furthermore, while a person on probation faces some restrictions on personal liberty and movement, the confinement experienced is much different from that of confinement in prison. *Wilbur*, 50 Ill. App. 3d at 68.

The *Wilbur* court emphasized these points by quoting two federal court opinions. In *Kaplan v. Hecht*, 24 F.2d 664-65 (2d Cir. 1928), the court stated: " '[T]he purpose [of probation] is to avoid imprisonment so long as the guilty man gives promise of reform. Clearly, therefore, probation is not intended to be the equivalent of imprisonment.' " Later, in *Hall v. Bostic*, 529 F. 2d 990, 992 (4th Cir. 1975), the court declared: "A person does not serve a prison sentence while on probation or parole any more than he does while free on bail. In both instances, there are certain restrictions generally on the person's movements but the person's condition *** is 'very different from that of confinement in a prison.' " After reviewing these cases, the *Wilbur* court concluded that "probation cannot and should not be

equated with imprisonment for purposes of the prohibition against double jeopardy." *Wilbur*, 50 Ill. App. 3d at 69; but see *K.J.M.*, 168 Ill. App. 3d at 567-58; *Martin*, 363 F.3d at 37-38; *Carpenter*, 320 F.3d at 345 n.10; *McMillen*, 917 F.2d at 777.

The distinction between probation and imprisonment recognized by some federal courts and our appellate court has long been acknowledged by this court as well. In *People ex rel. Barrett v. Bardens*, 394 Ill. 511, 516-17 (1946), this court stated: "Probation is a substitute for imprisonment. A primary purpose of the probation system is to give to defendants classified by the Probation Act, who have pleaded guilty or have been proved so, an opportunity for reformation, provided the trial court be satisfied there is reasonable ground to expect both that the defendant will be reformed and that the interests of society will be subserved. [Citation.] A sentence to imprisonment in the penitentiary cannot be synonymous with a grant of probation entitling a convicted defendant to escape a penalty of imprisonment." Later, in *People ex rel. Ward v. Moran*, 54 Ill. 2d 552, 556 (1973), this court reiterated the principle set forth in *Bardens* and stated that "[p]robation and imprisonment have been classified as penal sanctions [citation], but they are qualitatively distinct." More recently, in *People v. Williams*, 179 Ill. 2d 331, 335-36 (1997), we stated that probation and imprisonment are "inconsistent" because "[p]robation is a substitute for imprisonment that gives offenders an opportunity for reformation while allowing them to retain their freedom. [Citation.] A prison sentence, however, is imposed upon those whose crime and past behavior necessitate removal from society."

Probation has been described by our appellate court as a form of "clemency" and by this court as a "privilege." *People v. Henderson*, 2 Ill. App. 3d 401, 405 (1971); *People v. Allegri*, 109 Ill. 2d 309, 314 (1985). It is clear that probation is not a "punishment" in the same sense as imprisonment is a punishment. Indeed, were it otherwise, our General Assembly, whose legislative enactments are presumed to be constitutional (*People v. Ramsey*, 192 Ill. 2d 154, 157 (2000)), would not have forged a distinction between prison and probation such that the credit for time spent in prison is mandatory and the credit for time spent on probation is discretionary (730 ILCS 5/5–8–7(b), 5–6–4(h) (West 2004)). Accordingly, we find that a defendant sentenced to

probation, and then sentenced to imprisonment for the same offense, is not subjected to an unconstitutional second punishment for double jeopardy purposes and, therefore, is not entitled to credit for time spent on probation. This conclusion is particularly cogent in this case, where defendant was placed on a void probation in the first instance.

We are aware that this conclusion stands in conflict with some decisions of the federal circuit courts (*Martin*, 363 F.3d at 37-38; *Carpenter*, 320 F.3d at 345 n.10; *McMillen*, 917 F.2d at 777), but we are not bound by them (*Bowman v. American River Transportation Co.*, 217 Ill. 2d 75, 91 (2005)). We are also aware that this conclusion can be construed as contrary to that of our appellate court in *In re K.J.M.*, 168 Ill. App. 3d 564, 567-68 (1988), where the court held that, under *Pearce*, a minor was entitled to full credit for the time she spent in juvenile detention and juvenile probation toward any subsequent adjudication after her initial adjudication and sentence were rendered void. To the extent that *K.J.M.* conflicts with the instant opinion, it is overruled.


### Supervisory Authority

Our foregoing resolution of the parties' arguments demonstrates that the appellate court had absolutely no statutory, precedential, or constitutional basis for remanding this cause to the trial court. We agree with the State that the appellate court's conduct in this case amounted to an unauthorized use of supervisory authority, which the appellate court does not possess. *People v. Flowers*, 208 Ill. 2d 291, 308 (2003); *Marsh v. Illinois Racing Board*, 179 Ill. 2d 488, 498 (1997).

Supreme Court Rule 615(b) gives the appellate court significant powers when reviewing criminal cases. 134 Ill. 2d R. 615(b); *Flowers*, 208 Ill. 2d at 308. The appellate court is authorized to: "(1) reverse, affirm, or modify the judgment or order from which the appeal is taken; (2) set aside, affirm, or modify any or all of the proceedings subsequent to or dependent upon the judgment or order from which the appeal is taken; (3) reduce the degree of the offense of which the appellant was convicted; (4) reduce the punishment imposed by the trial court; or (5) order a new trial." 134 Ill. 2d R. 615(b). However, the court must act within statutory bounds when exercising these

powers. *Wade*, 116 Ill. 2d at 6; *Judd*, 396 Ill. at 212-13; see *In re Peak*, 59 Ill. App. 3d 548, 551-52 (1978) (stating that courts may not exceed statutory authority "no matter how desirable or beneficial the attempted innovation might be"). Furthermore, "[w]hile the appellate court may exercise significant powers on review of a criminal case (see 134 Ill. 2d R. 615(b)), it does not possess the same inherent supervisory authority conferred on our court by article VI, section 16, of the Illinois Constitution (Ill. Const. 1970, art. VI, §16)." *Flowers*, 208 Ill. 2d at 308.

In this case, the appellate court overstepped its authority and issued a supervisory-type order to the circuit court in a misguided attempt to reach a "fair" outcome. See *Marsh v. Illinois Racing Board*, 179 Ill. 2d 488, 498 (1997). Its conduct was improper.

Anticipating this conclusion, defendant asks this court to exercise its supervisory authority to order the trial court to consider giving him credit on grounds of fundamental fairness. Defendant points out that the use of this court's supervisory authority would be appropriate because this case presents a rare and unique factual situation.

Our supervisory authority is an " 'unequivocal grant of power.' " *McDunn v. Williams*, 156 Ill. 2d 288, 302 (1993), quoting *Attorney General v. Blossom*, 1 Wis. 317, 325 (1853). This authority extends to " 'the adjudication and application of law and the procedural administration of the courts.' " *City of Urbana v. Andrew N.B.*, 211 Ill. 2d 456, 470 (2004), quoting *Kunkel v. Walton*, 179 Ill. 2d 519, 528 (1997). It does not, however, extend to the legislative branch of our state government. *In re Adoption of L.T.M.*, 214 Ill. 2d 60, 71-72 (2005) ("The Illinois Constitution mandates that '[n]o branch [of government] shall exercise powers properly belonging to another.' Ill. Const. 1970, art. II, §1"). Simply put, "this court cannot make laws." *Judd*, 396 Ill. at 212; see also *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 394-95 (1998) ("It is the province of the legislature to enact laws; it is the province of the courts to construe them. Courts have no legislative powers; courts may not enact or amend statutes").

The Illinois legislature has not seen fit to provide a mechanism in the law by which a defendant can receive credit for time spent on a void probation, and our analysis here demonstrates that there is no constitutional basis requiring consideration of such a credit. We cannot, in the exercise of our supervisory authority, order the trial

court to consider giving defendant credit that is not sanctioned by our laws or required by our constitution. We acknowledge that we could use our supervisory authority to order the trial court to reduce defendant's sentence to set off the time defendant spent on probation. See *People ex rel. Ryan v. Roe*, 201 Ill. 2d 552, 557-58 (2002). However, we decline to exercise our supervisory authority for that purpose in light of the facts of this case.

## CONCLUSION

For the reasons above, we reverse the appellate court's judgment remanding this matter to the trial court for consideration of sentencing credit for the time defendant spent on a void probation.

*Reversed.*

### Dissent Upon Denial of Rehearing

JUSTICE BURKE, dissenting:

The majority declines to address the State's contention that defendant forfeited the sentencing credit issue in this case, stating:

> "The State argues in its brief to this court that defendant forfeited review of the credit issue on appeal because he never requested credit for the time he spent on probation during the sentencing proceeding and did not raise the issue in posttrial motions. Defendant does not dispute the State's assertion that the claim was forfeited. However, defendant maintains that the forfeiture rule was properly relaxed by the appellate court.
>
> We need not address the forfeiture argument raised by the State, or defendant's arguments in reply, because the State did not include the forfeiture issue in its petition for leave to appeal to this court. Supreme Court Rule 315(b) states that a petition for leave to appeal must contain 'a statement of the points relied upon for reversal of the judgment of the Appellate Court.' 177 Ill. 2d R. 315(b)(3). Rule 315(b) also requires 'a short argument (including appropriate authorities)

stating why review by the Supreme Court is warranted and why the decision of the Appellate Court should be reversed or modified.' 177 Ill. 2d R. 315(b)(5). The State's petition for leave to appeal does not meet either of these requirements with respect to the issue of forfeiture. Accordingly, we decline to consider the State's forfeiture argument, as it was not properly preserved for our review. See *People v. Campa*, 217 Ill. 2d 243, 269 (2005), citing *People v. Carter*, 208 Ill. 2d 309, 318 (2003); see also *People v. Williams*, 193 Ill. 2d 306, 347 (2000) ('The rules of waiver are applicable to the State as well as the defendant in criminal proceedings, and the State may waive an argument that the defendant waived an issue by failing to argue waiver in a timely manner'). We turn to the issues properly raised by the State." Slip op. at 4-5.

This reasoning is at odds with this court's decision in *Dineen v. City of Chicago*, 125 Ill. 2d 248 (1988).

In *Dineen*, the court stated the following about when issues not mentioned in a petition for leave to appeal would be considered by the court:

"Our Rule 315(b), which is applicable to both civil and criminal appeals (see 107 Ill. 2d R. 612(b)), requires that the petition for leave to appeal set out '(3) a statement of the points relied upon for reversal of the judgment of the Appellate Court; *** and (5) a short argument (including appropriate authorities) stating why review by the Supreme Court is warranted and why the decision of the Appellate Court should be reversed or modified.' (107 Ill. 2d Rules 315(b)(3), (b)(5).) We have previously held that we need not consider an argument that a party raises in a later brief but fails to raise in its petition for leave to appeal. (See, *e.g.*, *People v. Ward* (1986), 113 Ill. 2d 516, 522-23; *People v. Anderson* (1986), 112 Ill. 2d 39, 43-44.) In this case, then, the plaintiffs' failure to specifically raise in their petition for leave to appeal the issue of the effect of the City's retention of the Illinois Municipal Code provisions may be considered a waiver of the argument for purposes of the proceedings in this court.

To be sure, the waiver rule is not a jurisdictional requirement, but a principle of administrative convenience.

-17-

This is made clear by Rule 366(a)(5), which provides that a reviewing court has the authority to 'enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief \*\*\* that the case may require.' (107 Ill. 2d R. 366(a)(5); see *Hux v. Raben* (1967), 38 Ill. 2d 223, 224 (discussing relationship between Rule 366(a)(5) and Rule 341(e)(7), pertaining to contents of briefs on appeal).) Thus, a party's failure to assert the argument in the petition for leave to appeal does not preclude consideration of the question on review, and this court has previously considered matters that an appellant omitted from its petition for leave to appeal. (*E.g.*, *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 462; *Schatz v. Abbott Laboratories, Inc.* (1972), 51 Ill. 2d 143, 144-45.) In both *Genaust* and *Schatz* the additional issues that the appellants raised on review in this court concerned portions of their causes of action that had been presented to and adjudicated by the lower courts. The situation here is far different. In this case, the plaintiffs' new argument poses an alternative theory of the case, one that was not discernible from an examination of the proceedings in the courts below. Thus, in allowing the plaintiffs' petition for leave to appeal, we had no inkling of their new theory of the case, which they then asserted, following the allowance of their appeal, in support of the judgment of the circuit court. Clearly, we have the authority to consider the plaintiffs' new argument. But the resolution of the question is by no means clear, and we decline to consider here an argument that was not presented in the proceedings below and is raised here as an afterthought. We note, however, that our decision in this appeal is made without prejudice to the rights of persons who are not parties to the present action to raise the same argument in a future case, or to the rights of the present plaintiffs to raise the argument in a future case arising from a different cause of action. See *Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 251-52." *Dineen*, 125 Ill. 2d at 265-66.

Thus, according to *Dineen*, while this court has the authority to review an issue that is not raised in a petition for leave to appeal, it

-18-

retains the discretion not to do so as a matter of administrative convenience. That discretion, however, is not unbounded or exercised arbitrarily. Rather, the court will decline to reach an issue not raised in the petition for leave to appeal when that issue is new to the case and is "not discernible from an examination of the proceedings in the courts below." *Dineen*, 125 Ill. 2d at 265-66. Moreover, as this court has noted, review of an issue not specifically mentioned in a petition for leave to appeal will be appropriate when that issue is "inextricably intertwined" with other matters properly before the court. *Hansen v. Baxter Healthcare Corp.*, 198 Ill. 2d 420, 430 (2002).

Applying these principles here, the State's forfeiture argument may be considered by the court. The forfeiture issue is not something new to the appeal, but a matter argued by the parties below and ruled on by the appellate court at some length. See 366 Ill. App. 3d at 453-55. Morever, the forfeiture issue appears "inextricably intertwined" with the appellate court's statutory interpretation and voidness analysis. See 366 Ill. App. 3d at 453-55. In addition, defendant before this court does not object to the State's raising the forfeiture issue. Instead he argues only that the appellate court properly relaxed the forfeiture rule.

The majority's reasoning in this case turns the failure to mention an issue in a petition for leave to appeal into a *de facto* jurisdictional bar. Applying the majority's approach, the court will identify, *sua sponte*, an issue not mentioned in the petition for leave to appeal and will decline to consider it, even if it was addressed at length by the appellate court below, and even if both parties have addressed the merits of the issue in their respective briefs. Indeed, that the majority intends to treat the failure to mention an issue as a jurisdictional bar is made clear by the fact that the majority recognizes the State's omission of the forfeiture issue for the first time on consideration of the petition for rehearing. When this court filed its original opinion in this case, the court did not identify any problem with the State's petition for leave to appeal and, instead, answered the State's forfeiture argument on the merits. Recognizing the omission at this late date, without any prompting by the parties in their briefs or petition for rehearing, points to only one reasonable conclusion: the majority has determined that the court has an obligation to consider the omission of an issue from a petition for leave to appeal, on its own

-19-

motion, at any time–just as the court has an obligation, at any time, to examine its own jurisdiction.

Treating the failure to raise an issue in a petition for leave to appeal as a jurisdictional bar may be appropriate as a matter of policy. I express no opinion on that question. My concern in this case is simply with providing clarity to the attorneys who file petitions for leave to appeal in this court. Before barring review of the State's forfeiture argument, the majority should address *Dineen* and *Hansen*, explain why it is necessary to treat the omission of an issue from a petition for leave to appeal as the equivalent of a jurisdictional bar in this case and, most importantly, provide a clear statement as to what this court will henceforth expect to be included in petitions for leave to appeal. Because the majority declines to take these steps, I respectfully dissent.

JUSTICE FREEMAN joins in this dissent.